Next case for argument is 22-1390, Hantz Software v. Sage Intact. Mr. Hundell? Hundnell? Is that right? Hudnell. Hudnell. Mr. Hudnell. D before the N. Got it. Good morning, Your Honors. May it please the Court. The District Court's order dismissing Hantz's first amended complaint at the Rule 12 stage should be reversed because the asserted claims in this case pass the two-step test for determining eligibility, and the plausible allegations in the first amended complaint, which the District Court did not address, should have precluded dismissal. I want to focus my time today on explaining why the claims recite satisfied Step 2 of the eligibility test and show how the factual allegations in the complaint show that what is claimed was not well understood, routine, or conventional. I'd also like to address the District Court's invalidating all claims of the two patents at issue here. So first, if we could turn to Claim 1 of the 559 patent. And as Your Honors probably know, the two patents here relate to an accounting software, the 559 dealing with receivables, account receivables, the 560 dealing with accounts payable. Claim 1 recites an inventive concept because it recites a specific combination of steps in a specific order. And in order to illustrate this, I'm going to use an example. There was some mention of home maintenance earlier today, so I'll use the example of having a lawn company and a sprinkler company to illustrate how these claims recite an inventive concept. So first, there's three critical elements of this claim. The first one deals with the detail lines that go on the invoice that you receive. So, for example, if you have a lawn company and a sprinkler company, the lawn company charges $600, the sprinkler company charges $400. There would be an invoice for $1,000, but both of those detail lines for each of the two companies would appear on the invoice. The second step in the order here is adding multi-company balancing lines to the accounting program so that accounts receivable can be accurately reported. And when I say balancing lines, there is some dispute here as to what's being referred to by a balancing line, but I want to make clear that what Hans is talking about when he says balancing lines here, is that this is the line that takes that $1,000 invoice, and when you reflect the amount that's on the two companies' balance sheets, instead of reflecting the $1,000 for the lawn company's accounts receivable, it actually reflects the correct amount, $600. There's a line that's added by the software that will reduce that $1,000 to $600, so the accounts receivable actually shows $600, and its equity would be $600 as well. Similarly, on the sprinkler company's side of the balance sheet, you would have a $400 credit because it's owed $400 for its services, and that would be its accounts receivable, and then $400 would be its current earnings on the liability side. Then you receive payment for the invoice, the $1,000. That's the next step of the claim. And then finally, and this is probably the most critical element of the claim, is the adding of the due-to-due-from lines at the time of payment in order to accurately reflect the accounts receivable for the two companies. And so what would happen in this situation is that when you receive the $1,000 payment from the client, the software will then reflect $1,000 paid to the long company because the client's only going to pay one of the two companies. You'll pay the long company the $1,000. It will go into its bank account and reflect that as the accounts receivable. It will then use a due-to line, add a due-to line to the balance sheet to reduce that by the $400 that's owed to the sprinkler company. And then similarly on the sprinkler company's balance sheet, what will happen is it will get an accounts receivable. I appreciate your recitation, but the clock is running. So this recitation is intended to persuade us that there is a step two inventive concept. Correct. So can you talk about that in particular while you're going through what the claims say? Sure. So it's those three steps, Ryan, that have to have in that specific order. The detail lines, the balancing lines, the adding the due-to from at the time of payment, that allows you to accurately reflect the accounts receivable of both companies of this multi-company entity. So the long company and the sprinkler company are both under the umbrella of a larger company. In order to accurately reflect the accounts receivable for both of those companies individually, you have to follow these steps. You have to follow it in this order. Other multi-company. But these are the steps that the district court concluded were abstract under step one, right? Under step one. I thought our case law suggests that you can't use the abstract idea in connection with establishing an inventive concept at step two. Do you disagree with that? Somewhat I disagree with that. Maybe you could help us by just telling us, so what is the inventive concept here? The inventive concept is accurately reflecting the accounts receivable or accounts payable balance of two distinct companies of a multi-company enterprise. And how does that differ from what the abstract idea, what the district court concluded, at least, was the abstract idea? In two respects, Your Honor. First, the district court's description of the abstract idea was just merely using balancing lines to improve financial reporting. So that's not what we've claimed. But second and more importantly, what the claims recite is a specific ordered combination of steps that add more to what that abstract idea is. And the factual allegations in the First Amendment complaint support that, which the district court did not consider. That's what I wanted to get to next. So one of the unique facts of this case, Your Honors, is that Hans makes its own product. Sage Intech makes a product. And they actually had a conversation in 2008 between the inventor of the Hans solution, which is called B1 Financials, and Sage. And met with Sage – I'm sorry, actually at the time it was Intech before Sage acquired Intech. And the inventor here, Mr. Gellinman, explained to Sage in a meeting all the problems that existed with existing multi-company software for balancing AR and AP of two distinct entities. And he asked them – and this is alleged in paragraph 27 of the First Amendment complaint at appendix 252 – he asked them whether Intech's program at the time was capable of automatically reconciling the AR and AP of two distinct companies of a multi-company enterprise. And as alleged in paragraph 28 of the First Amendment complaint, the Sage personnel at the time indicated that would be too hard to do. And so we think that that provides evidence that what is claimed here, this order combination of steps, this specific order requiring a do-to-do-from at the time of payment being the third step, that this shows that this was not well understood. Sage or Intech at the time was a leading software maker. This was a few months before the patents in suit were filed. And they couldn't do it. Their product couldn't do it. And their own personnel said it would be too hard to do. Do we have any cases where that has been an issue? There's a case called Accenture, right, dealing with the complexity. And I think they – but any other cases over Accenture? What cases help you out on the notion that historically the other side or even anyone or the industry has recognized the complexity or the difficulty of doing something that is appropriately considered in the context of an inter-council? Sure. I mean, I think the line of cases from – well, specific to your question, I'm not aware of a case that answers your specific question. But I think the line of cases, Atrix, Cellspin, more recently Cooperative, they all say that in order to – in order – if you look at the claim, in order to – I'm sorry, which Sage thought was too hard to do, then you have to look at the evidence of whether it was well understood, not well understood, routine, or conventional. And that's what we have here. And I think, as I said before, I think our facts are unique because we did have this initial conversation. Hans had this initial conversation with Sage. In addition, Mr. Galliman, the inventor here, researched the art. And that's what's alleged in paragraph 30 of the complaint. And he researched the commercially available products at the time to determine whether there were any other products that could accurately balance AR and AP for two companies of a multi-company enterprise. And he couldn't find any. Counsel, you said that you wanted to also reach the issue of invalidating all the claims versus just one, and I think it's 31 to 33. Correct, Your Honor. Do you want to go ahead and move on to that issue? I do. So I think the key here on this issue, Your Honor, is that Sage cites no case where a party can unilaterally, through a Rule 12 motion, invalidate all claims of the asserted patent without asserting a counterclaim. And which, just as a follow-up to the Chief's question, which claims are you saying were beyond the scope of your first complaint? Right. So the first amended complaint only had claims 1, 31, 32, and 33. And what more did the district court do? Invalidating the entirety of the patent. So all claims of both patents. Is that because you had some kind of infringement chart attached to the complaint or something like that? That only, even though the language of the complaint talked about one or more claims, you narrowed it in the attachment? Correct. So in the body of the complaint, it only identified claims 1, 31, 32, and 33. The charts only identified claims 1, 31, 32, and 33. We represented at the hearing, at the district court level, that we were only asserting claims 1, 31, 32, and 33. We sought leave to amend and file a second amended complaint to add additional claims, claims 2 and 7. Sage opposed it, so clearly they thought that those two claims were not in the complaint. The district court denied the motion, so those claims weren't considered in the complaint. So what led the district court to conclude otherwise? Was it because, I mean, I think you did say in the complaint several times, right, in various places, one or more claims of the asserted patents. Is that what you think, I mean, in the absence of Exhibit C, which Judge Hughes mentioned, in the absence of Exhibit C being attached to the amended complaint, would it have been fair or game for the district court to do what you did? Well, let me, I think your first question was, what did the district court rely on? I don't think there's any analysis in the district court's opinion as to what was used to define that. But as I started, we think that that, whatever the district court did was unjustified because Sage hadn't asserted a counterclaim, and there was all these other indications that we were only asserting claims 1, 2, and 33. When they filed the Rule 12 motion and said these are all invalid, did you specifically tell the district court you can only rule on these claims? At the hearing, yes, we did. But not in your papers? I don't think there's a reference to that in the papers. So the opposition brief did not call that out? I mean, doesn't that kind of partially explain why the district court might have been confused about whether all the claims were at issue or not? Perhaps, but we don't know because there's nothing in the opinion that tells us that. Well, there's nothing in your opposition brief that says, oh, you should only concentrate on these claims. And they said you should concentrate on all of them. Why isn't that a problem for you? I mean, to me, that sounds like you're edging close to forfeiture of that argument. Well, actually, I think they're hedging towards forfeiture of the argument because what they would have needed to have done in their motion papers would be to argue that there was a case of controversy as to those claims, that they didn't argue that. But on top of that, Your Honor, as I said, we did raise it at the hearing. There were several other indications that I've listed that indicated that only claims 31 through 33 were at issue. And also the futility argument. I mean, when you tried to amend the claims, the judge said it would be futile. He didn't say, what do you mean, amend them? They're already in here. I wouldn't say – well – That was a friendly question. I don't think – he denied our motion for leave to amend to include the additional claims. So I don't – I read that as saying that claims 2 and 7 weren't in the case because we weren't allowed to add them to the case because that's what we were seeking to do. That was my point. Okay, why don't you save the remaining time for rebuttal. Thank you, Your Honor. Mr. Courtney. Thank you, Chief Judge Moore. I'd like to begin with the conversation we were just having about the procedural history here and the back and forth on the claims. I think, as the panel noted, both its initial complaint and its first amended complaint could be read either way. Certainly, there were charts that only analyzed for independent claims. That's not uncommon in patent actions. But then when we look at the text and the counts, they specifically said one or more claims. There was no language of restriction. Well, actually, there is. One or more claims in the very next sentence is Sage's infringement is detailed in Exhibit C to this complaint. So the very sentence that says one or more claims is followed by the sentence that directs you to the infringement chart, which only identifies one claim for the one patent and three claims for the other. That's absolutely correct, and we, I think, reasonably read that as saying here's an illustration of Sage's infringement. It is in the chart. Well, actually, when you say you reasonably read it, you apparently didn't reasonably read it that way when you filed your motion because in your motion on page 487 of the appendix, you said Hans' amended complaint does not assert any of the patent's various dependent claims against Sage. Regardless, nothing in those dependent claims changes the above analysis. So your own motion did not read that language as putting the dependent claims in issue because you specifically said otherwise in your own motion. So what I think the motion, how it was intended, and I take the point that the text is, of course, what it is, neither the complaint nor the First Amendment complaint articulate or enumerate any claims beyond the independent claims. However, we are in a notice pleading system civil procedure. To be safe, we filed a motion saying we're articulating our arguments on Section 101, subject matter and eligibility for all claims. When did you file a counterclaim to be safe? We filed a Rule 12 motion in lieu of answering or filing a counterclaim. We believe that's procedurally appropriate. Let's just assume we read the complaint as being confined to the ones that are in the attachment. Then the district court was wrong to enter judgment against all of them, right? I think we have to look at that in context of how things later proceeded. No, no, no, no. Answer my hypothetical. Let's assume that we find that the complaint was limited to the claims asserted in the infringement chart. Then those other claims aren't part of this case. So without a counterclaim from you, the district court shouldn't have granted a 12B motion on those. Is that right? As I understand the hypothesis that's being given, it's to hypothesize that there was no case or controversy as to the other claims. Yeah. Under that hypothesis, yes, the district court can, of course, only reach those claims. If that's the case, then we have to vacate and remand that portion of the judgment. Again, under this hypothesis, I think that would be appropriate. I do think the record does, of course, show Hans saying, by the way, Hans believes there is infringement. How much does it really matter? I mean, if these claims ever get asserted, the dependent claims ever get asserted against you, you're just going to file another 12B motion for lack of eligibility, aren't you? A third one, yeah. And I think that was what the district court was noting, was that we had filed two already. Hans came to the hearing and announced that they actually believed there was infringement of dependent claims. They didn't say there was no case or controversy as to those claims. Well, that was when they were trying to get claims two and seven added into the case, and the district court didn't allow them to. So, of course, they had to make a case for why they should be allowed to get dependent claims added to the case. I think we have a complex hypothesis. We're starting with Judge Huda's hypothetical and moving forward from there. We believe that the district court read the complaint and the amended complaint as raising a case or controversy as to all claims in the patents. And we think the opinion that he says says that he does analyze the dependent claims to completeness, but we think the fairest reading of that complaint, particularly when read in the context of Hans' commentary at the hearing, is that Hans believed there was a case or controversy for claims beyond the independent claims. But when they raised the second amended claim, which consisted of two and seven, two of those, he didn't say, you didn't say, well, these are already there. Why do you need to amend your complaint to do it? The district court said it would be futile, right? Partly because the result would be futile, because they're not significantly different than the claims that had been asserted. But that seems a little intention with suggesting that all of these claims were in the complaint in the first place. I agree that the district court's opinion doesn't recite that overlap between the asserted claims as an aspect of his futility determination. But I think when we look at the full record, it does look like the district court believed further pleading amendments would be futile. I'd also like to add, if there's a judgment on these claims that Hans brought against my client, they're going to have a preclusion problem down the line. Well, I was going to suggest that, too. But when you're talking about the claims brought, you're talking about the limited independent claims. Thank you, Judge Preston. There might be a preclusion issue, at least with your client, maybe not with another defendant. Thank you. That's the point I was trying to make. Well, I mean, not only would there be a preclusion problem, if they try to assert these defendant claims against you at a later point in time, I would think you could bring an antitrust counterclaim against them for asserting claims that are indistinct from the claims that are already adjudicated ineligible, if that's the conclusion we reach. So I would think that while all of this might be a bit of an exercise in something that doesn't matter, to be honest with you, whether we invalidate the defendant claims, which may not be proper, or whether we reinstate them, but if we hold the independent claims unenforceable, ineligible, then I don't see how your client's at any risk going forward. And if it is, it seems to me it could be a frivolous litigation claim by you. Certainly our client would look at all options available to it were this to happen. I think the hypothetical does bring us back to the Alice inquiry, which I do want to make sure we talk about a little bit. Okay. And in so doing, I mean, he addressed, as I understood it, all of step two. And it seemed to me to sound entirely like he was addressing the abstract idea. And that's all there was there. And secondly, could you just address the comment that he emphasized, which is that you all said it was too hard to do? Thank you. I'll take the latter one first, if I may. We are at the pleading stage. Well-pleaded allegations are taken as true. And so we have not put energy into disputing that. However, my client has investigated this and does dispute that in fairly strong terms. But let's assume it were true. Does that sink your case? No, I don't think it does. And the reason why it doesn't is that even as pled and then as further alleged in the second amended complaint, those allegations don't establish any nexus between what's actually in Hans' claims and what's this alleged conversation that happened between a Hans employee and an intact employee. Hans has claimed a very particular set of steps. We think they're abstract and lacking in an inventive concept. Whether an employee at intact thought that that abstract idea was hard to implement or not does not speak to the presence of either abstractness at step one or inventive concept at step two. And I want to emphasize, Judge Post, I think you directed my colleague to this court's precedent on step two. The BSG case we cite, we cite other cases in that line. Alice itself says that the inventive concept stage, you're not looking at the entire claim. That would be akin to a novelty inquiry, an obviousness inquiry. You're looking at those elements that have been added to the claim that go beyond the concept found to be patent ineligible. And I think that's where the analysis that's being advanced by Hans really starts to fall apart. Their proposals about inventive concept really do reduce back to an allegation that the fundamental idea here is novel. And with all respect, that's not the inquiry at step two. At step two, we submit under BSG and Alice, we look at the implementation of that idea. We look at the collateral elements in the claim that go beyond that idea and we examine are those parts unconventional or otherwise sufficient to confer patent eligibility. Here, those elements recite things like a processor doing things processors traditionally do, a multi-company accounting system doing things multi-company accounting systems traditionally do, and a user interface doing what a user interface traditionally does. So we would submit there's no grounds for a determination of unconventionality at step two of Alice. I do think that this approach is consistent with what we've seen elsewhere. By letter, my colleague advised the court of the cooperative entertainment case. We don't view cooperative entertainment as inconsistent with anything that's being advanced here. Cooperative entertainment looks at a fairly detailed claim and says at step two, we see detailed elements that are not coming from the underlying potentially abstract concept that can provide that inventive concept, and we don't see anything like that enhances claims. With that, I'm happy to answer any other questions about the district court's opinion. We do believe it should be affirmed in full. If there's no further questions, we'll rest on the briefs. Thank you, Mr. Corky. Mr. Hudnall, you have some rebuttal time. Thank you, Your Honors. First, I just wanted to correct something that I said earlier on which claims were in the case point or issue. At Appendix 528, in our request in our opposition to their motion, our request for leave to amend, which was included in our opposition to the motion, we did say that Hans seeks leave to file a second amended complaint, including additional relevant materials and addressing any dependent claims that may be proper. So I think I said earlier that we didn't specifically say that there was a reference to the dependent claims in the motion, but there was at least that sentence that I just read. Now, addressing the last points that my friend just addressed, specifically the BSG case. So we do not read BSG as saying you take the claim and then once you identify the abstract idea that's in the claim, you white out all that language, and now you need to look and see what's left. We don't read BSG that way. In fact, if you look at BSG, BSG says that you still need to do the Step 2 analysis. You still need to consider whether at Step 2 what's recited in the claim is either well understood, routine, or conventional. And that's what we have here. And with respect to my friend's point about there being no nexus as to what we're saying is the inventive concept, there is a nexus, and it's described in the first amended complaint. Again, looking at paragraph 27, it said, Mr. Gelliman asked whether the NTAC program was capable of providing automatic reconciliation and real-time, accurate reporting of AP and or AR financial data or records of each entity in a multi-company enterprise. He said that right to the NTAC personnel. And then similarly- Okay, Mr. Hudnell, thank you very much. You're out of time. Thank you, counsel, for the argument. The case is taken under submission.